1  Patricia Lee (8287)
2  Telia U. Williams (9359)
   HUTCHISON & STEFFEN, LLC
3  10080 West Alta Drive, Suite 200
   Las Vegas, NV 89145
4  Tel:    (702) 385-2500
   Fax:    (702) 385-2086
5  twilliams@hutchlegal.com

6  *Attorneys for Leslie Rutledge and Falco Investments*

   **UNITED STATES DISTRICT COURT**
7  **DISTRICT OF NEVADA**

8  LESLIE RUTLEDGE, an individual, and          )  Case No.
   FALCO INVESTMENTS, a Canadian               )
9  company, derivatively on behalf of Nominal  )
   Defendant Double Crown Resources, Inc.,     )
10                                             )
           Plaintiffs,                         )  **VERIFIED SHAREHOLDER**
11                                             )  **DERIVATIVE COMPLAINT**
   v.                                          )
12                                             )  **JURY TRIAL DEMANDED**
   DAVID FIGUIREDO, an individual; ALLEN       )
13 LOPEZ, an individual; GLEN SOLER, an        )
   individual; JERRY DREW, an individual;      )
14 MARC DUNCAN, an individual; DIANE           )
   DALMY, an individual; ANTONIO B.            )
15 CASTILLO, an individual; KEITH              )
   TUBANDT, an individual; PAUL MURPHY,        )
16 an individual; BOARD OF DIRECTORS OF        )
   DOUBLE CROWN RESOURCES, INC.,               )
17 individuals;                                )
                                               )
18         Defendants,                         )
                                               )
19         -and-                               )
                                               )
20 DOUBLE CROWN RESOURCES, INC., a             )
   Nevada company,                             )
21                                             )
           Nominal Defendant.                  )
22                                             )
                                               )
23 _____ )

24         Plaintiffs Leslie Rutledge ("Ms. Rutledge") and Falco Investments, Inc. ("Falco"),

25 (collectively, "Plaintiffs") on behalf of Double Crown Resources, Inc. ("Double Crown" or "the

26 company"), based on, *inter alia*, a review of publicly available information, including Securities

27 and Exchange Commission ("SEC") filings by Double Crown, media reports about Double

28

Crown, and other court pleadings concerning the defendants, allege upon personal knowledge
as to themselves and their own acts, and upon information and belief as to all other matters:

### INTRODUCTION AND SUMMARY

1.      Plaintiffs derivatively on behalf of nominal defendant Double Crown seek relief
for the damages sustained, and to be sustained, by Double Crown, against certain current and
former top executives, its corporate counsel, and its Board of Directors ("the board"), for
violations of state and federal law, including their breaches of fiduciary duties, abuse of control,
gross mismanagement, waste of corporate assets, and unjust enrichment.

2.      Double Crown's senior management has engaged in certain transactions, such as
issuing stock at below market value to themselves to reap thousands of dollars in windfall
profits at the expense of the company.  More recently, as could be ascertained by the
announcement by the board in a news release on April 23, 2013, the board lowered the price of
the company's stock in order to fix a discount price on their non-brokered private placement
funding, an abuse of control, and waste of assets motivated by self-dealing.

3.      Double Crown's current and/or former board members have acted in bad faith by
continuing to refuse to release the restrictive legend on certain validly issued and registered
shares of restrictive common stock, and coercing and/or colluding with the company's counsel,
Diane Dalmy, to retract legal opinions submitted to two different stock transfer agents.

4.      Furthermore, Double Crown has failed to take steps to remove or control
demonstrably incompetent and/or unethical advisors and counsel, such as Diane Dalmy, who
has provided negligent advice, and/or has a conflict of interest with the company, and whose
reputation harms the company's image, reputation, and goodwill.

5.      The Exchange Act requires the company to make all timely filings with the SEC.
The Board of Directors is responsible for several, un-excused late filings. The board failed to
file the company's quarterly statement due in for the period ending March 31, 2012, due in June
2012, in derogation of their duty, and causing direct harm to the company.  Instead, the Board
filed Form 12b-25, "Notification of Late Filing."  This led to the company's being de-listed on
the Over-the-Counter Bulletin Board (OTCBB) as of May 30, 2012.

2

6.     The unlawful conduct occurred while defendants were directing and/or advising the company.  These directors authorized or failed to halt the unlawful conduct complained of herein in dereliction of their fiduciary duties to the company as directors and/or officers. Defendants' conduct has unjustly enriched Double Crown's top executives, including the management defendants identified below, and has exposed the company to great expense and liability, and caused and/or allowed the company to suffer potentially hundreds of thousands of dollars in harm, to the detriment of the company and its shareholders.

## JURISDICTION AND VENUE

7.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2).  Plaintiffs and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.     The court has personal jurisdiction over each defendant because each defendant has committed acts related to the claims at issue in this complaint within this district, and one or more of the individual defendants are citizens of the State of Nevada.

9.     Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(a)(1) because one or more defendants either resides or maintains executives offices in this district, nominal defendant Double Crown is headquartered in this district and a substantial portion of the transactions and wrongs complained of herein occurred and continue to occur in this district.  Moreover, defendants have received substantial compensation in this district by doing business here and engaging in numerous activities in this district.

## PARTIES

10.     Ms. Rutledge, an individual, is now, and at all relevant times herein was, a resident of British Columbia, Canada.  Falco is a shareholder of Double Crown, and has continuously held the company's shares since approximately July 2009.  Ms. Rutledge is the president of Falco.

11.     Falco is a company headquartered in, and organized under the laws of

1   British Columbia, Canada. Falco is a shareholder of Double Crown, and has also continuously

2   held its shares since July 2009.

3        12.    Nominal defendant Double Crown is a Nevada corporation founded in 2006,

4   with its principal place of located in Henderson, Nevada. Double Crown is a gold and mineral

5   mining, and natural resource exploration and development company. Double Crown is a rapidly

6   growing, closely-held, publicly traded company. Among other things, the company owns one

7   hundred percent interest in the Bateman gold property located in the Thunder Bay District of

8   Northwestern Ontario, Canada. The company also owns the McNab Molybdenum Property,

9   consisting of 334.809 hectares located near the headwaters of McNab Creek in Southwest

10  British Columbia. Double Crown is also currently targeting new properties in North, South, and

11  Latin America. Multiple oilfield service projects are reportedly currently in development.

12       13.    Defendant Jerry Drew is the president and chief executive officer of Double

13  Crown, and is a resident of California.

14       14.    Defendant Glenn Soler is a former member of the Board, and a resident of

15  Texas.

16       15.    Defendant Diane Dalmy is an attorney for Double Crown, and a resident of

17  Colorado.

18       16.    Defendant Allen Lopez is a member of the Board, and a resident of Houston,

19  Texas.

20       17.    Defendant David Figuiredo is a former member of the Board, and a resident of

21  California.

22       18.    Defendant Marc Duncan is a former member of the Board, and a resident of

23  California.

24       20.    Defendant Antonio B. Castillo is a member of the Board, and upon information

25  and belief, a resident of Texas.

26       21.    Defendant Keith Tubandt is a member of the Board, and upon information and

27  belief, a resident of Virginia.

28       22.    Defendant Paul Murphy is a former member of the Board, and a resident of

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

4

1  Canada.

2  ## OBLIGATIONS AND DUTIES OF THE DEFENDANTS

3      23.    By reason of their positions as directors, officers, and/or fiduciaries of the

4  company, and because of their ability to control the business, corporate and financial affairs of

5  the company, each of the defendants owed the company and its shareholders the duty to exercise

6  due care and diligence in the management and administration of the affairs of the company and

7  in the use and preservation of its property and assets; the duty of loyalty, to put the interests of

8  the company above their own financial interests; and the duty of candor, including full and

9  candid disclosure of all material facts related thereto.

10      24.    Further, defendants owed a duty to the company and its shareholders to ensure

11  that the company operated in compliance with all applicable federal and state laws, rules, and

12  regulations, and that the company not engage in any unsafe, unsound, or illegal business

13  practices.  The conduct of defendants complained of herein involves knowing violations of their

14  duties as directors, officers, and/or fiduciaries of the company, and the absence of good faith on

15  their part, which defendants were aware or should have been aware, posed a serious risk of harm

16  to the company.

17      25.    To discharge these duties, defendants were required to exercise reasonable and

18  prudent supervision over the management, policies, practices, controls, legality, and financial

19  and corporate affairs of the company.  By virtue of these obligations of ordinary care and

20  diligence, defendants were required among other things, to:

21      (a)    manage, conduct, supervise, and direct the employees, businesses, and affairs of

22      the company in accordance with the laws, rules and regulations, and the charter

23      and bylaws of the company;

24      (b)    neither violate nor knowingly or recklessly permit any officer, director, fiduciary,

25      or employee of the company to violate applicable laws, rules and regulations, and

26      to exercise reasonable control and supervision over such officers, directors,

27      fiduciaries, and/or employees; ensure the prudence and soundness of policies and

28      practices undertaken or proposed to be undertaken by the company;

HUTCHISON & STEFFEN
A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

(c)     remain informed as to how the company was, in fact, operating and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit, and the wrongful manipulation of company stock prices, issuance, and/or transfer;

(d)     supervise the preparation and timely filing of all SEC filings, and to preserve and enhance the company's reputation as befits a public corporation and to maintain public trust and confidence in the company as a prudently managed institution fully capable of meeting its duties and obligations.

26.     Defendants breached their duties of loyalty, full disclosure, due care and/or good faith by failing to timely file required filings, refusing to remove the legends from validly issued and registered shares of restricted stock, issuing penny stocks and artificially lowering the price of stock, and engaging unethical and disreputable advisors, among other things.

## DERIVATIVE ACTION, DEMAND LETTER, AND DEMAND FUTILITY ALLEGATIONS

27.     Plaintiffs bring this action derivatively in the right and for the benefit for the company to redress the harm suffered, and to be suffered, by the company as a direct result of the breach of fiduciary duty, waste of corporate assets, and unjust enrichment, alleged herein. The company is named as a nominal defendant solely in a derivative capacity.

28.     Plaintiffs will adequately and fairly represent the interest of the company in enforcing and prosecuting its rights.

29.     Plaintiffs are and have continuously been owners of the company stock during the relevant period.

30.     On or near June 26, 2012, plaintiffs made a demand on the board, individual

6

1   board members, and counsel for the company.

2       31.    Plaintiffs' demand letter highlighted several breaches of duty, loyalty, and

3   improprieties as complained of herein. The demand letter exposed that defendants, and each of

4   them, had shown extremely poor judgment and fiscal irresponsibility in a way that undermines

5   shareholder trust, and most importantly, the well-being of the company. The demand letter laid

6   out the specifics of the board's mismanagement with a clear instruction that the board should

7   take immediate steps to remedy the identified problems for both the well-being of the company

8   and shareholders.

9       32.    The board did nothing in response to the demand letter. Ms. Dalmy failed to

10  respond to two letters: The demand letter, which was also in part addressed to her, and another

11  letter separately addressed to her. Some members of the board refused service of the demand

12  letter, which was sent by certified mail. On or near July 9, 2012, then-president, David

13  Figuiredo, replied to plaintiffs' letter alternately by disclaiming any responsibility for any of the

14  problems raised in the letter, and denying that the problems were worthy of concern, including

15  the board's absent or late filing, and continued reliance on Ms. Dalmy for advice even after she

16  had proven untrustworthy.

17      33.    Plaintiffs thus have complied with the requirement of making a demand on the

18  board prior to bringing this derivative suit. And plaintiffs' demand letter has gone unheeded.

19      34.    Any further demand on the board to bring this action on behalf of the company,

20  or to take any steps to correct the conduct complained of herein, would be futile.

21      35.    All of the director defendants authorized, approved, or ratified, the acts

22  complained of herein.

23      36.    The failure to comply with the requirements of timely filing, refusal to release

24  validly issued stocks, and employing disreputable counsel, among other things complained of

25  herein, are not within the director defendants' business judgment, and they are not protected by

26  that doctrine.

27      37.    The director defendants' artificial lowering of stock prices and issuance of penny

28  stocks to themselves and/or any insider trading are unlawful and not protected by the business

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

1   judgment rule.  Further, any suit by the defendants to remedy these particular allegations could

2   also expose them to suit for securities fraud.  Thus, they are conflicted and are not able to make

3   an independent determination of a demand that they would cause the company to bring this

4   action.

5        38.   All of the defendants participated in, approved, or permitted the wrongs alleged

6   herein to have occurred and participated in efforts to conceal or disguise those wrongs from the

7   company shareholders and/or acting in negligence disregarded the wrongs complained of herein,

8   even when the same were pointed out to the directors in plaintiffs' demand letter, and are

9   therefore not disinterested parties.  The company remains under the control and influence of the

10  Board, and is unable to protect itself or remedy the wrongs inflicted upon it.

**GENERAL ALLEGATIONS**

12  **Late Filings**

13       39.   The board is responsible for several, un-excused late SEC filings.  Among others,

14  the board failed to file the company's quarterly statement for the period ending March 31, 2012,

15  which was due in June 2012, in derogation of their fiduciary duty, and inexplicably filing

16  instead, Form 12b-25, "Notification of Late Filing."

17       40.   Unfortunately for the company, any late filing harms the company's reputation,

18  image, and goodwill.  The late filing of a required statement is a typical indicator of a company

19  having financial troubles–in this case, the board gave the impression that the company was not

20  doing well, a detriment to instilling public confidence and positive valuation of its stock.

21       41.   Additionally, the board's late filings led to the company's being de-listed on the

22  Over-the-Counter Bulletin Board (OTCBB) as of May 30, 2012.  As is well-known in the

23  industry, a company is usually de-listed because of a major financial event or management

24  decision that makes the company's future bleak.  Accordingly, the company's not being

25  permitted to trade on OTCBB constituted a significant devaluation for the company.

26       42.   The company then had to trade on the OTC Markets Group, Inc. on the

27  "OTCQB" tier.  OTCQB is a daily publication compiled by the National Quotation Bureau

28  (NQB) with bid and ask prices of over-the-counter (OTC) stocks, and publishes the quotations

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

8

in heretofore paper-based pink sheets. (Thus, this tier is often referred to as "Pink Sheets"). There are no financial or qualitative standards to be in this tier of trading.

43.     For this reason, the SEC regards companies trading on OTCQB as among the most risky in terms of investment.  By causing the company to have to trade on OTCQB, the board, by its actions and/or omissions unquestionably degraded the company's value.

44.     Furthermore, when Allen Lopez became a director, which occurred on or near April 13, 2012, he failed to file his SEC Form 3 Statement of Beneficial Ownership, as was required within a short time of his having become a director.  This constituted another late filing that betokened fiscal irresponsibility, violated the rules, and caused harm to the company.

45.     Yet, in response to the plaintiffs' demand letter about the late filings, former president of the board, Mr. Figuiredo, denied responsibility and essentially laid fault for the company's late filings at the feet of the company's prior accounting firm, Seale & Beers.  Mr. Figuiredo falsely implied, without explaining, that the hiring of Seale & Beers was at least partly the fault of the plaintiffs.

46.     Mr. Figuiredo also impliedly blamed the late filings on the plaintiffs, falsely alleging that the plaintiffs had "control" of the company's books and records.  The books and records, though, were, and are, in the board's possession and control.  Mr. Figuiredo also denied, in the face of clear evidence of the same, that the company had been de-listed.

47.     The combined non-action and non-response of the board, which, as has been mentioned, included refusing service of the demand letter, along with Mr. Figuiredo's non-acceptance of responsibility for the company's problems all leads to the reasonable conclusion that the board is abusing its control and grossly mismanaging the company.

48.     The defendants have in all of this, acted in a manner contrary to the best interests of the company and to the shareholders.

**Stock Transfer**

49.     Shareholders in the company have been unable to remove the restrictive legend from approximately 12,852,500 of registered shares of restricted common stock.

50.     Diane Dalmy, who serves as in-house counsel for Double Crown, provided

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

9

1   legal opinions for founder shares in the name of Denarii Capital Enterprises Ltd.  Subsequently,

2   the restrictive legend has been removed from approximately 13,147,500 shares which have been

3   transferred and deposited into CEDE & CO., a large clearinghouse that holds shares in its name

4   for banks, brokers, and institutions in order to expedite the sale and transfer of stock.

5   Shareholders have been unable to remove the restrictive legend that was eligible to be removed

6   in October 2012 from approximately 12,852,500 of registered shares of restricted common

7   stock.

8        51.   Nonetheless, when shareholders have attempted to have the restrictive legend

9   removed, they were unable to.  The company's stock transfer agent in Florida, Island Stock

10  Transfer, disclosed to shareholders that the board had restricted the transfer.  The board has

11  inexplicably refused to allow shareholders to have these restrictive legends removed from

12  validly issued and registered shares of restrictive common stock.

13       52.   For reasons not disclosed to shareholders, the company changed stock transfer

14  agents from Island Stock Transfer in Florida to Empire Transfer Stock Company in Henderson,

15  Nevada. Empire Transfer Stock Company also disclosed that the board had called into question

16  the legitimacy of the shares and refused to have the restrictive legend removed.

17       53.   Either the board or Ms. Dalmy has directly contradicted Ms. Dalmy's prior legal

18  opinion by calling into question the legitimacy of the disputed shares for which Ms. Dalmy

19  provided her opinion.  Thus, the board has either unjustifiably questioned Ms. Dalmy's opinion,

20  or Ms. Dalmy's opinion is itself questionable.

21       54.   In either scenario, the board has failed to protect shareholders from

22  negligent legal advice, and further, has done nothing to prevent or rectify the situation where

23  shareholders are being impeded  from legitimately transferring their shares.  Such an

24  unjustifiable and unacceptable business practice  obviously damages shareholders and ultimately

25  the company itself.

26       55.   Worse, neither the board nor Ms. Dalmy has ever responded to shareholders'

27  inquiries about this situation, including regarding the time when the shares will be released.

28

HUTCHISON & STEFFEN
A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

10

56.     In particular, when Ms. Rutledge and Falco have repeatedly contacted the board and Ms. Dalmy for an explanation as to why they are purporting that the shares were improperly issued, neither Ms. Dalmy nor the board ever responded.

57.     Neither did the board take steps to rectify the situation, nor did Ms. Dalmy ever revise her opinion so that the shareholders may retrieve the shares.  There is no reason why the shares, which have been all issued, should not be released.   Yet, the board unjustifiably continues to block the restriction from being lifted, and Ms. Dalmy has persisted in retracting her former legal opinion.

58.     After repeated inquiries, Ms. Dalmy finally informed shareholders that she has been generally instructed by the board not to provide a legal opinion on shares eligible to have the restriction removed.  There can be no valid business judgment justification for this stance.  The board has coerced and/or colluded with Ms. Dalmy to have Ms. Dalmy retract legal opinions submitted to the two different stock transfer agents.

59.     All the shareholders have lost the opportunity to sell those shares when the stock went as high as $.049 in February 2012, but which price then sunk to significantly below that.  The stock price then again went up to $.0625 on April 4, 2013, but again the shareholders were unable to capitalize on this increase.

60.     Mr. Figuiredo disregarded plaintiffs' request, made in the demand letter, that the restrictive legend on the shares be removed.  Instead, he alleged that "numerous" shareholder requests had been honored, and falsely stated that 18,850,000 shares of common stock had been removed. Yet, the plaintiffs understand, on information and belief, that no shareholder requests have been honored, and numerous shareholders are still adversely affected by the problem of the restrictive legends, including the plaintiffs.

61.     The company's shares have been increased as of April 2011.  In the company's annual SEC Form 10-K that it filed for the period ending December 31, 2010, the board acknowledged that the company "is obliged to issue convertible notes with the same terms as disclosed [herein] upon increasing its authorized shares to a level that would allow enough shares to be issued, to replace the...quarterly debt amounts.  When the debt amounts become

1   convertible, another 19,193,100 common shares would be issuable at the option of the note

2   holder." Yet the board refuses to comply with its recognized obligations.

3       62.    As of June 2011, an additional sum of $366,275.00 should have been authorized

4   and converted to common shares. But the board did not comply. And the resulting problems

5   from their failure to comply only continue to increase. Per the Form 10-K filed for the period

6   ending December 31, 2012, the debt with interest has grown to $801,192.00.

7       63.    As then-president, Mr. Figuiredo's response was woefully inadequate to address

8   the plaintiffs' valid and sincere concerns about the activities of the company, especially as

9   regards the restrictive legends on the shares, and attests to the company's abuse of control and

10  gross mismanagement.

11  **Negligent Advisors**

12      64.    The board has breached its duty to ensure that the professionals it consults are

13  competent and worthy of trust. Specifically, the board has acted unreasonably in hiring and

14  retaining Ms. Dalmy as counsel for the company. Ms. Dalmy is posted as a prohibited attorney

15  on the OTC Markets Group website. OTC Market Group operates an electronic inter-dealer

16  quotation system used by broker-dealers to trade securities not listed on a national securities

17  exchange such as NASDAQ or NYSE. As a result of her prohibited status, Ms. Dalmy may not

18  submit attorney letters or legal opinions to OTC Markets Group. This is a move ordinarily

19  taken because of inconsistency and/or unreliability of an attorney's counsel.

20      65.    Ms. Dalmy has refused to respond to shareholder inquiries, violating her duty

21  to provide prompt communications to members of the company. And she has also served

22  individually as counsel to Ms. Rutledge and Falco at the same time that she has served as

23  counsel for the company, which represents a conflict of interest insofar as Ms. Rutledge and

24  Falco are shareholders who, among other things, oppose the company's decision (by means of

25  the board) to withhold the transfer of the aforementioned shares. Continuing to represent these

26  entities in the presence of an apparent conflict constitutes negligence.

27      66.    Moreover, Ms. Dalmy has negligently advised the company, and breached her

28  fiduciary duties, by failing to authorize a $334,313.29 debt owed to Falco to be converted into

12

common shares. The paperwork was completed, signed, and the resolutions by the board to issue those shares. The board has directed Ms. Dalmy to increase the authorized shares of the common stock from 100 million to 500,000 million. But Ms. Dalmy did not timely comply with this requirement, resulting in 19,193,100 common shares being rescinded until the company's authorized shares were increased to allow enough shares to be issued. 13,238,220 shares were authorized to be issued but ultimately blocked. This was another incidence of Ms. Dalmy's incompetence.

67. Plaintiffs, in particular, had specifically asked Ms. Dalmy to increase the authorized shares, and as the company's lawyer, she should have been aware and sensitive to this issue. Per Jerry Drew, current president of the company, the aforementioned shares were eventually issued but were then rescinded again. But such inconsistency unquestionably hurts not only shareholders but the company as well.

68. Indeed, as aforementioned, Ms. Dalmy has been banned from Pink Sheets. Not only that, Ms. Dalmy has the dubious distinction of being only one of 18 lawyers relegated to Pink Sheets' "Hall of Shame." Thirteen of Ms. Dalmy's lawyer cohorts on the list have been cited by the SEC for securities breaches.

69. Companies that have trusted in Ms. Dalmy's advice have gone belly-up, or have been investigated by the SEC. Stunningly, several of the clients for which Ms. Dalmy has provided legal advice have been banned by the SEC. Perhaps more disturbing, one of the companies that Ms. Dalmy advises, or used to advise, Lexington Resources, was found not to have properly registered its shares. That company was eventually ordered to disgorge more than $2 million as a penalty and recompense.

70. Such an indictment in the industry, and in the public eye, of Ms. Dalmy is shocking and should be actionable. Yet, the board turns a blind eye to it. The board continues to make Ms. Dalmy its, and the company's, most trusted legal advisor, with little to no oversight, and relies upon her to assure that the board and the company carry out their legal obligations. This is an egregious breach of the board's fiduciary duty.

71. It should be obvious to the board that even if Ms. Dalmy has not behaved

13

unethically or incompetently in her role as the company's lawyer, her reputation for unethical dealings and incompetence cast a pall on the legitimacy of Double Crown and seriously harms the company.

72.     An observer might draw the reasonable, though false, conclusion that Double Crown is among those disreputable companies that have drawn Ms. Dalmy's assistance.  Few investors would want to risk investing in such a company.  This has undoubtedly already occurred and continues to occur, and such harm to the company's image and goodwill is irreparable.

73.     Ms. Dalmy has also mis-advised Double Crown and may potentially have exposed, and continue to expose, the company to liability for inappropriate registration of shares, and activities that are deemed illegal and/or unethical by the SEC.

74.      It is not in the company's best interest to retain in-house counsel whose most salient securities experience has been gained by helping companies that are known to be disreputable and/or risky companies and/or investors.

75.     Ms. Dalmy's serious mis-steps in advising the company, such as issuing and then retracting opinion letters for shares is enough to indicate that she is simply not up to the ethical or legal task of adequately advising the board about its responsibilities to the company and its shareholders.

76.     Ms. Dalmy's failure to explain her mistake–either by her legal opinion, or her retraction–and complete stonewalling silence to the company and shareholders is appalling.  She even refused to respond by letter or otherwise to plaintiffs' counsel's letters prior to the bringing of this action.  Ms. Dalmy refuses to respond to any of the shareholders who have contacted her about the restrictive shares problems or other perceived legal issues affecting the company.

77.     Ms. Dalmy does not return any phone calls or emails.  Ms. Dalmy has proven herself incompetent at guiding this company on the complex, ever-changing, and highly-nuanced demands of providing legal advice regarding securities and other important matters to the company. Yet, the demand to the board to remove Ms. Dalmy has been to no avail.

14

78.     The board has also erred in taking the advice of Norm Newsom, an individual who is notorious for his unprincipled approach to securities trading, and was convicted of embezzlement in Canada in or near 1982.  Several years ago, Mr. Newsom was under criminal investigation for another securities-related crime.  While he was an advisor to the board, Norm Newsom made investments to the detriment of the company, and held and/or operated companies with interests in conflict with the company's, with the consent of the Board, who largely turned a blind eye to Mr. Newsom's activities, which also hurt the company.

79.     That the board ever consulted with Mr. Newsom as a "special advisor" is extremely problematic.  Yet, the board continued to consult with Mr. Newsom, and follow his advice, even after it had evidence, or reasonably should have known, of Mr. Newsom's sordid background in the securities industry, and his having fallen again under investigation.

80.     The board's actions in consulting with Mr. Newsom, as well as Ms. Dalmy, have caused confusion and uncertainty with shareholders, and must be enjoined from arbitrarily providing opinions and then retracting them, to the detriment of shareholders.

81.     As a result of the board's actions, the company has already suffered, and will continue to suffer substantial financial damage.  The company's goodwill and reputation have also been damaged.

**Lowered Stocks**

82.     The company issued penny stocks in contravention of the company, as evinced by the company's 8-K dated September 15, 2011, filed with the SEC.

83.     The company issued to Mr. Figuiredo an aggregate of 6,000,000 shares of its restricted common stock at the artificially deflated price of $0.005.  The company issued 5,000,000 shares of its restricted common stock at the same artificially deflated price of $0.005 to Jerry Drew; 4,000,000 shares of its restricted common stock at $0.005 to Glenn Soler; and 3,000,000 shares of restricted common stock at $0.005 to Tricia Oakley, a secretary employed with the company.  This persistent re-issuance of cheap stock has resulted in dilution to existing shareholders, and damaged the financial interests of the shareholders as well as the company.

15

84.    The penny stock issuances have also depressed the value of the company for the sake of enriching the aforementioned Board members, or former Board members, and are inappropriate and unnecessary compensation.

85.    This is no more apparent than for Mr. Figuiredo and Ms. Oakley, who have or had little to no previous experience in managing a publicly traded company.  Nor do they, or until recently, anyone else on the Board, have any technical or mining experience.

86.    The company even admitted in its Form 10-K, dated December 31, 2011, that its officers and directors serve only part-time, and devote part of their working time to other business endeavors.

87.    More recently, as could be ascertained by the announcement by the board in a news release on April 23, 2013, the board lowered the price of the company's stock in order to fix a discount price on their non-brokered private placement funding, an abuse of control and waste of assets apparently motivated by self-dealing.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty - All Defendants)

88.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though they were fully set forth at length herein.

**The Board of Directors**

89.    The board owes the company fiduciary obligations.  The company's bylaws, articles of incorporation, other company papers, as well as the common law specifically set forth the duties of loyalty, care, and good faith that board members are required to fulfill on behalf of the company.  The violation and/or omission of any of these duties constitutes a breach of fiduciary duty.

90.    In addition, under Nevada law, the board bears ultimate responsibility for the management of the company.  Nevada Revised Statutes §78.120 provides that "the board of directors has full control over the affairs of the corporation."

91.    Nevada law also places limits on directors' discretion so that corporations might

16

act lawfully and serve the interest of their shareholders.  Nevada Revised Statutes §78.138

provides, "Directors and officers shall exercise their powers in good faith and with a view to the

interests of the corporation."

92.     The common law fiduciary duties of loyalty, care, and good faith require the

board to strictly avoid any conflict between duty and self-interest.  Undivided allegiance to the

corporation's best interest is required.

93.     The board has breached its fiduciary duty by, among other things, self-dealing, or

using their position for personal profit at the expense of the company.

94.     The board has also breached its fiduciary duty by failing to establish and

maintain adequate internal controls to ensure the company is operated in a prudent and lawful

manner.

95.     The board's failure to operate in a prudent and lawful manner is demonstrated,

among other things, by the company's and/or board's failure to timely file required forms.  The

board has an obligation to ensure that the company complied with the law, including making

timely filings.

96.     Among other things, the board also has a duty to ensure that shareholders have

their restrictive legends removed from validly issued and registered shares of restrictive

common stock.  The board's continuing failure to do so constitutes a breach of its fiduciary

duties.

97.     Among other things, the board also had a duty to ensure that the company

appropriately issued shares at market prices.  The board's self-dealing by endorsing shares at

below-market prices violates its fiduciary duties.  That the board did this, and continues to do

this, without informing shareholders is an egregious breach of its duties.  For example, among

other things, the shareholders had to find out about the board's lowering of stock prices for a

private placement in the company's press release.

98.     Moreover, the board has a duty to ensure that the professionals they consult are

competent and worthy of the trust reposed by the company by way of its board.

99.     The board's behavior in its continued relationship with Ms. Dalmy, and

17

1  perhaps Mr. Newsom, constitutes a breach of fiduciary duty and attenuates any appeal that the

2  board may make to reasonable business judgment.

3      100.    The board also has unreasonably and recklessly reposed trust in Ms. Dalmy as

4  the company's in-house counsel 's reputation as a securities lawyer is abysmal.  As mentioned,

5  Ms. Dalmy has been prohibited from providing legal opinions and letters to the OTC Markets

6  Group.  Media reports also indicate the board's folly in turning to Ms. Dalmy for advice for the

7  company, and/or allowing her to operate as the company's in-house counsel.

8      101.    Ms. Dalmy's continued involvement with the company is clearly not a benefit

9  to the company.  That the board continues to keep her on in the face of the overwhelming

10  evidence showing that Ms. Dalmy is not an appropriate choice for legal counsel speaks to some

11  secret self-interested relationship or transaction, which also breaches the board's fiduciary duty.

12      102.    All of the allegations reveal that the board has knowingly participated in,

13  approved and permitted the wrongs and/or conflicts of interest herein to have occurred, and the

14  board has benefitted from the wrongdoing.  As such, the board is not entitled to the protection of

15  the business judgment rule.

16  **Diane Dalmy**

17      103.    By virtue of her status and position as an attorney for the company, Ms. Dalmy

18  owes the company fiduciary obligations.  As a result of the attorney-client relationship, Ms.

19  Dalmy owes the company a duty of care and skill.  She owes Double Crown the fiduciary duty

20  to act at all times in good faith and in the company's best interest.  Among other things, she has

21  a duty to perform the services for which she was retained with reasonable care and skill.  The

22  violation and/or omission of any of her duties constitutes a breach of fiduciary duty.

23      104.    Ms. Dalmy has breached her fiduciary duty to the company as its counsel by,

24  among other things, writing a legal opinion to release the restrictive legend on the

25  aforementioned set of shares, and then, without any apparent justification, removing her legal

26  opinion which has left the company's shareholders without recourse to shares that are

27  legitimately theirs, and eligible for redemption.  Such action has caused the shareholders

28

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

18

1   damage due to the fluctuation in stock price for which the shareholders could not take

2   advantage, and still cannot.

3       105.   Ms. Dalmy has also breached her fiduciary duty to the company as its counsel by

4   failing to maintain her independence as the company's counsel and, upon information and

5   belief, bending to the board's will in retracting her opinion regarding the aforementioned shares,

6   Ms. Dalmy has also breached her fiduciary duties to the  plaintiffs in particular to whom she has

7   acted as counsel, in conflict with her duties as counsel for the company.

8       106.   Ms. Dalmy has breached her fiduciary duty by failing to communicate with the

9   company's shareholders.  Ms. Dalmy does not return phone calls and has sealed herself off from

10  the numerous queries from shareholders, including the plaintiffs.  A letter that plaintiffs'

11  counsel sent to Ms. Dalmy requesting information about the subject shares–separate from the

12  demand letter that plaintiffs sent to the board–went completely unanswered.  Ms. Dalmy did not

13  even acknowledge receiving the letter, which was delivered to her by certified mail.

14      107.   Ms. Dalmy has breached her fiduciary duty by failing to supervise, or negligently

15  supervising the attorney whom she selected to assist her in dispatching her legal duties for the

16  company, Michael Woodford.  Mr. Woodford also gave a legal opinion in favor of removing the

17  restrictive legend and then retracted it, just as Ms. Dalmy had done.  An attorney exercising the

18  knowledge, skill, and ability ordinarily possessed and exercised by members of the legal

19  profession in similar circumstances would not have engaged in this conduct.

20      108.   The board and Ms. Dalmy have a duty not to do anything or omit doing

21  something that would cause the company to suffer a loss of goodwill.  As a direct and proximate

22  result of all of the defendants' breach of the fiduciary duties, Double Crown has been damaged,

23  not only financially, but also to its corporate image and goodwill.

24      109.   As a result of the misconduct alleged herein, the defendants are all liable to the

25  company, and their continuing violations of duty should be enjoined.

26

27                    **SECOND CAUSE OF ACTION**
                    **(Waste of Corporate Assets - Director Defendants)**

28      110.   Plaintiffs repeat and reallege each and every allegation contained in the

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

foregoing paragraphs as though they were fully set forth at length herein.

111.    As a direct and proximate result of the defendants' conscious breaches of their fiduciary duties of loyalty, good faith, and due care, defendants have wasted, and continue to waste, precious corporate assets and thus, the company has been harmed.  As a result of the misconduct alleged herein, each defendant is liable to the company for their waste of thousands of corporate assets in inappropriately issuing stocks below market value.

112.    This action therefore seeks restitution to Double Crown for the wasteful acts of improperly awarding stocks at a lower price than their worth, for artificially lowering stocks for the sake of a private placement of investors, and for the costs and expenses that have, and will be paid, by the company as a result of the defendants' wrongdoing.

113.    As a direct and proximate result of defendants' wrongful conduct, the company has suffered damages in an amount to be proven at trial. The defendants are also liable to the plaintiffs for attorneys' fees and punitive damages.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment-Director Defendants)

114.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though they were fully set forth at length herein.

115.    As a result of the issuance of penny stocks and deliberate lowering of stock prices, the director defendants have been and will be unjustly enriched at the expense of and to the detriment of the company.

116.    Accordingly, this court should order the director defendants to disgorge all profits, benefits, and other compensation obtained by the director defendants, and each of them, from their wrongful conduct and fiduciary breaches described herein, and should order the options held by the director defendants, which have not been exercised, to be repriced at the market price of the company's stock on the dates that those options were granted, and/or the dates that the court finds occurred before the board's decision to artificially lower them.

HUTCHISON & STEFFEN

A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

20

### FOURTH CAUSE OF ACTION
#### (Gross Mismanagement-Director Defendants)

117.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though they were fully set forth at length herein.

118.    By their actions alleged herein, the director defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the company in a manner consistent with the operations of a publicly held corporation.

119.    As a direct and proximate result of the director defendants' gross mismanagement and breaches of duty alleged herein, the company has sustained and will continue to sustain significant damages in the hundreds of thousands of dollars.

120.    As a result of the misconduct and breaches of duty alleged herein, the defendants are liable to the company. The defendants are also liable to the plaintiffs for attorneys' fees and punitive damages.

### FIFTH CAUSE OF ACTION
#### (Preliminary and Permanent Injunction)

121.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though they were fully set forth at length herein.

122.    The defendants' refusal to release the restrictive legend on the shares is a breach of fiduciary duty, as is the defendants' issuing below market shares.

123.    The plaintiffs seek a permanent injunction enjoining the defendants to release the restrictive legend of the stocks in question.   This action also seeks to enjoin future breaches of fiduciary duty and issuance of below-market shares of stock.

124.    The plaintiffs also seek to enjoin the defendants from inappropriate issuances of below market shares without prior shareholder notice and approval.

125.    The board should immediately remove from her position as counsel, Ms. Dalmy.

126.    The benefits of and/or detriment related to the board's actions, as well as the

HUTCHISON & STEFFEN
A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

potential harm, are speculative and therefore would be difficult to remunerate with money damages.

127.   The plaintiffs enjoy a likelihood of success on the merits and will be irreparably harmed in the absence of enjoining the board from continuing to withhold the shares.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.   Awarding against all defendants, and each of them, and in favor of Double Crown, the damages sustained by the company as a result of defendants' breaches of their fiduciary duties;

2.   Awarding to Double Crown restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

3.   Enjoining the removal of any and all improper restrictive legends on the shares in question;

4.   Directing the Board to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the company's existing governance obligations and all applicable laws, and to protect the company and its shareholders from a recurrence of the damaging events described herein;

5.   To remove from the company negligent and/or unethical advisors, including the company's counsel, Diane Dalmy;

6.   Extraordinary equitable and/or injunctive relief as permitted by law, equity, and/or any state statutory provisions, including declaring the improper lowering of stock prices complained of herein as null and void, and attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their assets so as to assure the plaintiffs on behalf of the company has an effective remedy;

7.   Awarding to the plaintiffs the costs and disbursements of the action, including

22

1   reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses, as well as an

2   award of punitive damages;

3        8.     For any other relief that the court deems appropriate.

4

5   Dated this 3rd day of May, 2013.

6                                      HUTCHISON & STEFFEN, LLC

7                                      /s/ Telia U. Williams

8                                      Patricia Lee (8287)
                                   Telia U. Williams (9359)

9                                      10080 West Alta Drive, Suite 200
                                   Las Vegas, Nevada 89145

10                                     *Attorneys for Leslie Rutledge and Falco*

11                                     *Investments*

12                            **VERIFICATION**

13       I, Leslie Rutledge, as president of Falco Investments, Inc. ("Falco"), declare that I have

14  reviewed the Verified Shareholder Derivative Complaint prepared on behalf of myself and

15  Falco, and authorize its filing. I have reviewed the allegations made in the complaint, and to

16  those allegations of which I have personal knowledge, I believe those allegations to be true. As

17  to those allegations of which I do not have personal knowledge, I rely on my counsel and their

18  investigation and for that reason believe them to be true. I further declare that Falco is a current

19  holder, and has been a holder of Double Crown common stock at all relevant times.

20

21  Dated this 3 of May, 2013.

22                                     Leslie Rutledge

23

24

25

26

27

28

                                                23

HUTCHISON & STEFFEN
A PROFESSIONAL LLC
PECCOLE PROFESSIONAL PARK
10080 WEST ALTA DRIVE, SUITE 200
LAS VEGAS, NV 89145

1

**JURY DEMAND**

2   Plaintiffs demand a trial by jury.

3           Dated this 3rd day of May, 2013.

4                                           HUTCHISON & STEFFEN, LLC

5                                           /s/ Telia U. Williams
                                            Patricia Lee (8287)
6                                           Telia U. Williams (9359)
                                            Peccole Professional Park
7                                           10080 West Alta Drive, Suite 200
                                            Las Vegas, Nevada 89145
8
                                            *Attorneys for Leslie Rutledge and Falco*
9                                           *Investments*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24